UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

STACEY BRACKINS,

    Plaintiff,

v.                                      Case No. 8:23-cv-1736-CPT

MARTIN O'MALLEY,
Commissioner of the Social Security
Administration,[1]

    Defendant.
_____/

**O R D E R**

The Plaintiff seeks judicial review of the Commissioner's denial of her claims for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). (Doc. 22). For the reasons discussed below, the Commissioner's decision is affirmed.

I.

The Plaintiff was born in 1967, has at least a high school education, and has past relevant work experience as a customer service representative. (R. 32–33, 284, 314). The Plaintiff applied for DIB and SSI in August 2020, alleging disability as of

---

[1] Mr. O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Federal Rule of Civil Procedure 25(d), Mr. O'Malley is substituted for the former Acting Commissioner, Kilolo Kijakazi, as the Defendant in this suit.

April 2020 due to anxiousness, memory loss, tingling in her hands and feet, bleeding in the back of her left eye, and an inability to stand for long periods of time. *Id.* at 15, 284–90, 292–95, 313. The Social Security Administration (SSA) denied the Plaintiff's applications both initially and on reconsideration. *Id.* at 178–91, 194–209.

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter in June 2022. *Id.* at 45–77. The Plaintiff was represented by counsel at that proceeding and testified on her own behalf. *Id.* A vocational expert (VE) also testified. *Id.*

In October 2022, the ALJ rendered a decision that was partially favorable to the Plaintiff. *Id.* at 15–35. In particular, the ALJ found that the Plaintiff: (1) had not engaged in substantial activity since her alleged onset date in April 2020; (2) had the severe impairments of obesity, hypertension, anxiety and major depressive disorders, neurocognitive disorder secondary to status-post cerebrovascular accident, and Type 2 diabetes mellitus with peripheral neuropathy, proliferative diabetic retinopathy,[2] and macular edema;[3] (3) did not, however, have an impairment or combination of impairments that met or medically equaled the severity of any of the listings;[4] (4) had

---

[2] Proliferative diabetic retinopathy is "an advanced stage of diabetic eye disease marked by the growth of new blood vessels that bleed, impeding vision with dark spots or blocking it entirely." *Frary v. Comm'r of Soc. Sec. Admin.*, 2023 WL 2988360, at *4 n.10 (N.D. Ohio Feb. 6, 2023), *report and recommendation adopted*, 2023 WL 2752250 (N.D. Ohio Mar. 31, 2023).
[3] Macular edema occurs when blood vessels in the retina leak fluid into the center part of the retina due to diabetes. *See Diabetic macular edema*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/diabetic-retinopathy/multimedia/diabetic-macular-edema/img-20124558 (last visited Sept. 27, 2024). The fluid buildup causes blurry vision. *Id.*
[4] The listings are found at 20 C.F.R. Pt. 404, Subpt. P, App'x 1, and catalog those impairments that the SSA considers significant enough to prevent a person from performing any gainful activity. 20

the residual functional capacity (RFC) to perform a modified range of light work subject to certain limitations, including—as pertinent here—that she could not perform tasks requiring good use of fine depth perception, good use of left-sided visual acuity,[5] or good use of left-sided peripheral vision; and (5) based on the VE's testimony, could not engage in her past relevant work but could perform other jobs that exist in significant number in the national economy up until August 3, 2022,[6] after which time she was disabled. *Id.* at 15–35. In light of these findings, the ALJ concluded that the Plaintiff was not disabled prior to August 3, 2022. *Id.* at 35.

The Appeals Council denied the Plaintiff's subsequent request for review. *Id.* at 1–6. Accordingly, the ALJ's decision became the final decision of the Commissioner. *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1313 (11th Cir. 2021) (citation omitted).

## II.

The Social Security Act (the Act) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous

---

C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). When a claimant's affliction matches an impairment on the list, the claimant is automatically entitled to disability benefits. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984).

[5] Visual acuity measures how sharp vision is at a distance. *See* Daniel Porter, *Visual Acuity*, American Academy of Ophthalmology (Jan. 20, 2022), https://www.aao.org/EYE-HEALTH/TIPS-PREVENTION/visual-acuity-3. A normal visual acuity is 20/20, and visual acuity decreases as the bottom number increases. *Id.*

[6] Prior to the established disability onset date, the Plaintiff was an individual closely approaching advanced age. (R. 33). On August 3, 2022, however, her age category changed to an individual of advanced age, and she was deemed disabled as of that date. *Id.* at 33–34; 20 C.F.R. §§ 404.1563, 416.963.

3

period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a).[7] A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To determine whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam) (citing 20 C.F.R. § 404.1520(a)(4)).[8] Under this process, an ALJ must assess whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals one of the listings; (4) has the RFC to engage in her past relevant work; and (5) can perform other jobs in the national economy given her RFC, age, education, and work experience. *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). Although the claimant bears the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1278–79 (11th Cir. 2020) (citation omitted); *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). If the Commissioner carries that burden, the claimant must then prove she

---

[7] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.

[8] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

cannot engage in the work identified by the Commissioner. *Goode*, 966 F.3d at 1279. In the end, "'the overall burden of demonstrating the existence of a disability . . . rests with the claimant.'" *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision on the claimant's disability application after a hearing. 42 U.S.C. § 405(g). Judicial review is confined to ascertaining whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is buttressed by substantial evidence. *Id.*; *Hargress v. Soc. Sec. Admin.*, *Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (per curiam) (citation omitted). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation marks and citations omitted). In evaluating whether substantial evidence bolsters the Commissioner's decision, a court may not decide the facts anew, reweigh the evidence, or make credibility determinations. *Viverette*, 13 F.4th at 1314 (citation omitted); *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam)). Further, while a court will defer to the Commissioner's factual findings, it will not defer to his legal conclusions. *Viverette*, 13 F.4th at 1313–14; *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

III.

Although not entirely clear, it appears that the Plaintiff raises two challenges on appeal: (1) the ALJ's assessment of the Plaintiff's visual impairment in her right eye is not supported by substantial evidence; and (2) the ALJ's RFC determination relating to her eyesight problems is too vague. (Doc. 22 at 3–6). Each of these challenges will be addressed in turn.

A.

As noted above, the ALJ's task at step four is to determine a claimant's RFC and her ability to perform her past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545, 416.920(a)(4)(iv), 416.945. To do so, an ALJ must discern based on all the pertinent evidence before him what a claimant can do in a work setting despite any physical or mental restrictions caused by the claimant's medically determinable impairments—severe and non-severe—and related symptoms. *Id.* §§ 404.1545(a)(2), 416.945(a)(2) ("[The SSA] will consider all of [a claimant's] medically determinable impairments of which [it is] aware, including [a claimant's] medically determinable impairments that are not 'severe,' . . . when [the SSA] assess[es a claimant's RFC]."); *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268–69 (11th Cir. 2019) (same) (citation omitted).

An ALJ, however, is not required to expressly discuss every piece of evidence in his decision. *See Stowe v. Soc. Sec. Admin., Comm'r*, 2021 WL 2912477, at *4 (11th Cir. July 12, 2021) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam)). Instead, the ALJ need only ground his RFC determination on

6

the claimant's condition "taken as a whole," *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (citations omitted), after evaluating all the material information presented, 20 C.F.R. §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a).  As long as the Court can ascertain from the ALJ's decision that he assessed all the relevant evidence, the final responsibility for deciding a claimant's RFC rests with the ALJ.  *Id.* §§ 404.1545, 416.945.

In this case, the Plaintiff argues that the ALJ's failure to include any limitations in his RFC determination for her right eye in addition to the restrictions he imposed for her left eye is not buttressed by the record.  (Doc. 22 at 5).  To bolster this contention, the Plaintiff asserts that—akin to her left eye—she experiences "reduced visual acuity" in her right eye which "could certainly impact her ability to sustain work activity," and that this visual impairment has lasted more than twelve continuous months.  *Id*.  This argument fails.

As an initial matter, it appears from the ALJ's RFC determination that he did, in fact, incorporate a limitation to accommodate the Plaintiff's problems with her left eye *and* her right eye, insofar as he found that she could not "perform tasks requiring good use of fine depth perception."  (R. 22).  On its face, this restriction is not directed at one eye as opposed to the other and can fairly be inferred to apply to both of them.  The Plaintiff does not address this limitation in her memorandum, much less demonstrate why it is inadequate.

Regardless of this issue, the ALJ's RFC determination concerning the Plaintiff's right eye is supported by substantial evidence.  In his decision, the ALJ acknowledged

7

that the Plaintiff had encountered various difficulties with her right eye, including a diagnosis of a moderate non-proliferative diabetic retinopathy in her right eye in August 2020, *id.* at 25, 586; a diagnosis of a right-eye diabetic macular edema in January 2021, *id.* at 25, 612–13; an infection in her right eye requiring laser treatment which she reported on her disability report on appeal in May 2021, *id.* at 23, 353; complaints of blurred vision in October 2021, albeit predominantly relating to her left eye, *id*. at 32, 1037; and a vitrectomy to address a right-eye vitreous hemorrhage in January 2022,[9] *id.* at 26, 935–36.

    Despite these difficulties, however, the ALJ observed that after the Plaintiff underwent surgery on her right eye in January 2022, the post-operative follow-up records for the ensuing two or three months revealed she was "doing well." *Id.* at 26, 978–79, 981–82, 985–86.  While the Plaintiff subsequently claimed that "her vision had . . . worsened" and that she experienced "blurred vision in both eyes" since the surgery, the ALJ made an express credibility determination that the Plaintiff's "statements concerning the intensity, persistence[,] and limiting effects of [her] symptoms [were] not fully supported for the reasons explained in [his] decision." *Id.* at 23–24, 50, 58–59, 371, 377.  The Plaintiff does not contest this credibility assessment

---

[9] A vitreous hemorrhage occurs when blood gets into vitreous, which is a structure that fills the back of the eye. *See* Kathleen Koviak, *Vitreous Hemorrhage*, Kellogg Eye Center (Apr. 2015), https://www.med.umich.edu/1libr/Ophthalmology/Retina/VitreousHemorrhage.pdf.  This condition causes blurred vision, dark spots, floaters, or blocked vision, and can take a few months to clear up by itself. *Id.*  One of its primary causes is diabetes. *See* Parang Mehta, *What Is a Vitreous Hemorrhage?*, WebMD (Aug. 17, 2022), https://www.webmd.com/eye-health/what-is-vitreous-hemorrhage.

8

and has thus waived any such argument. *See Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995) (per curiam) (stating that a reviewing court will not disturb a properly substantiated and clearly articulated credibility finding made by an ALJ); *see also Grant v. Soc. Sec. Admin., Comm'r*, 2022 WL 3867559, at *2 (11th Cir. Aug. 30, 2022) (concluding that a party abandons a claim when, among other things, she "raises it in a perfunctory manner without supporting arguments and authority") (citing *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681–82 (11th Cir. 2014)); *Battle v. Comm'r, Soc. Sec. Admin.*, 787 F. App'x 686, 687 (11th Cir. 2019) (per curiam) ("Issues raised in a perfunctory manner . . . are generally deemed to be waived.") (internal quotation marks and citation omitted); *Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006) (per curiam) (finding that a plaintiff waived an argument "because he did not elaborate on [the] claim or provide citation to authority about [it]") (citation omitted).

Along with the results of the Plaintiff's right eye surgery in January 2022, the ALJ also cited the prior administrative medical findings rendered by—as relevant here—two state agency consultants, Drs. Tara Reynolds and Cristina Rodriguez. (R. 31–32). Dr. Reynolds conducted a medical review at the initial level and determined that the Plaintiff did not have any visual impairments. *Id.* at 31, 111–14, 132–35. The ALJ characterized Dr. Reynolds's opinion as "only somewhat persuasive," recognizing that it was limited by the information available to Dr. Reynolds at the time. *Id.* at 31.

Dr. Rodriguez performed a medical review at the reconsideration level and found that the Plaintiff had limited left-eye near acuity, far acuity, depth perception, accommodation, and color vision. *Id.* at 31, 151–52, 162–63. Accordingly, Dr. Rodriguez supplemented the restrictions she had already imposed on the Plaintiff[10] to include an additional limitation that the Plaintiff avoid even moderate exposure to hazards due to her monocular vision. *Id.*

The ALJ deemed Dr. Rodriguez's assessment deserving of greater weight than Dr. Reynolds's, reasoning:

> The undersigned finds Dr. Rodriguez'[s] opinion . . . persuasive, as the additional visual and hazard exposure limitations [she implemented] are consistent with the updated record, including treatment and evaluation with respect to the [Plaintiff's] proliferative diabetic retinopathy, diabetic macular edema, [and] nuclear sclerosis. Dr. Rodriguez'[s] opinion is also consistent with later-submitted, updated records . . . reflecting 2021 treatment for complaints of blurred vision, worse on the left than on the right, as well as records documenting the [Plaintiff's] January 2022 vitrectomy to address a right-eye vitreous hemorrhage. The undersigned notes that while the post-operative treatment records [for this surgery] . . . not[ed] the [Plaintiff] was doing well, visual limitations and hazard avoidance, as assessed by Dr. Rodriguez, [are] warranted, and therefore incorporated in the [Plaintiff's RFC].

*Id.* at 31–32 (internal citations omitted).

Notably, the Plaintiff does not quarrel with the ALJ's evaluation of Dr. Rodriguez's or Dr. Reynolds's medical findings. *See* (Doc. 22). As a result, she has

---

[10] These other restrictions were that the Plaintiff could not climb ladders, ropes, and scaffolds but could frequently balance, stoop, kneel, crouch, and crawl. (R. 31, 150–52, 161–63).

waived any such contention.  *Grant*, 2022 WL 3867559, at *2; *Battle*, 787 F. App'x at 687; *Outlaw*, 197 F. App'x at 828 n.3.

Based on the foregoing, the Court finds that the ALJ properly considered the Plaintiff's condition "taken as a whole," *Jamison*, 814 F.2d at 588 (citations omitted), after evaluating all the pertinent information in the record, 20 C.F.R. §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a).  As described above, this information includes the problems the Plaintiff had with her right eye, the results of the January 2022 surgery on that eye, and Dr. Rodriguez's finding that the Plaintiff had limited left-eye near acuity, far acuity, depth perception, accommodation, and color vision.  (R. 22–32, 151–52, 162–63, 353, 586, 612–13, 935–36, 978–79, 981–82, 985–86, 1037).  It is also evident from the recitation of the evidence above that the ALJ's RFC determination is sufficiently bolstered by the record.

The Plaintiff's efforts to single out items in the record that she believes buttress her position are unpersuasive.  (Doc. 22 at 3–5).  "Under [the] substantial evidence standard of review, [the Plaintiff] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion."  *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (citing *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam)).  The Plaintiff does not do so here.

The Plaintiff's argument is also flawed, insofar as it essentially asks the Court to reweigh the evidence, which the Court cannot do.  *Viverette*, 13 F.4th at 1314; *Carter*, 726 F. App'x at 739.  The fact that the ALJ did not explicitly identify in his decision

some of the information upon which the Plaintiff now relies does not alter this conclusion. As referenced previously, it is not necessary for an ALJ to set forth every piece of evidence in his decision, so long as his decision demonstrates that he considered the claimant's medical condition as a whole, which the ALJ did here. *See Stowe*, 2021 WL 2912477, at *4 (citing *Dyer*, 395 F.3d at 1211).

B.

The Plaintiff's next challenge is directed at the verbiage the ALJ employed in framing the Plaintiff's visual limitations in his RFC determination. (Doc. 22 at 5–6). As explained earlier, these restrictions were that the Plaintiff could not perform tasks requiring "good" use of fine depth perception, "good" use of left-sided visual acuity, and "good" use of left-sided peripheral vision. *Id.*; (R. 22). The Plaintiff now asserts that the ALJ's utilization of the adjective "good" is too vague because "[n]o reviewing court could understand what the [ALJ] intended or meant by th[at] term[.]'" (Doc. 22 at 6); *see also* (R. 22). This challenge fails as well.

To begin, the Plaintiff does not supply any legal authority or engage in any meaningful analysis to buttress this argument. As such, she has waived it. *Grant*, 2022 WL 3867559, at *2; *Battle*, 787 F. App'x at 687; *Outlaw*, 197 F. App'x at 828 n.3.

Even were the Court not to find a waiver, the Plaintiff's contention is meritless in any event. "Courts in this circuit routinely reject the argument that [an RFC] limitation is vague where . . . there is no indication that either the ALJ or the VE misunderstood its plain meaning." *Thomas v. Comm'r of Soc. Sec.*, 2020 WL 5810219, at *4 (M.D. Fla. Sept. 30, 2020) (collecting cases). Here, neither the ALJ, the VE, nor

12

even Plaintiff's counsel expressed any doubt at the hearing about the meaning of the word "good." *See* (R. 74–76). Nor did Plaintiff's counsel ever object to the ALJ's use of this term. *See id.*; *see also Risch v. O'Malley*, 2024 WL 3319928, at *4 (N.D. Fla. Feb. 14, 2024) (finding the ALJ did not err when he employed the word "superficial" in the RFC determination because neither the VE nor the claimant's attorney voiced any confusion about its meaning at the hearing); *Little v. Colvin*, 2013 WL 3786617, at *9 (N.D. Fla. July 18, 2013) (concluding that the RFC's phrase purported to be vague was sufficiently clear since the ALJ utilized a similar phrase in his hypothetical to the VE and the claimant's attorney neither objected to it nor sought any clarification on the issue); *Luzzi v. Berryhill*, 2017 WL 432949, at *2 (W.D. Pa. Feb. 1, 2017) (deeming the phrase "good binocular vision" not to be too vague in assessing what jobs could be performed).

IV.

For the foregoing reasons, it is hereby ORDERED:

1. The Commissioner's decision is affirmed.

2. The Clerk of Court is directed to enter Judgment in the Defendant's favor, to terminate any pending motions, and to close the case.

SO ORDERED in Tampa, Florida, this 30th day of September 2024.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record